
1  SHAWN N. ANDERSON
   United States Attorney
2  ROSETTA L. SAN NICOLAS
   Assistant United States Attorney
3  Sirena Plaza, Suite 500
   108 Hernan Cortez Avenue
4  Hagåtña, Guam   96910
   PHONE:  (671) 472-7332
5  FAX:  (671) 472-7215

FILED
DISTRICT COURT OF GUAM

NOV 26 2019

JEANNE G. QUINATA
CLERK OF COURT

6  Attorneys for the United States of America

7              IN THE UNITED STATES DISTRICT COURT

8               FOR THE TERRITORY OF GUAM

9

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AUDREY JEAN WOLFORD,<br><br>Defendant. | CRIMINAL CASE NO.  19-00026<br><br><br>**PLEA AGREEMENT** |

15         Plaintiff, United States of America, by and through Shawn N. Anderson, United States

16  Attorney for the Districts of Guam and the NMI, and Rosetta L. San Nicolas, Assistant United States

17  Attorney for the Districts of Guam and the NMI, and Defendant AUDREY JEAN WOLFORD and

18  the Defendant's counsel, JEFFREY A. MOOTS,  agree to the following Plea Agreement:

19  1.   **Guilty Plea and Maximum Statutory Penalties:**

20         The Defendant AUDREY JEAN WOLFORD, agrees to plead guilty to Counts 1 and 5 of the

21  Indictment filed on June 19, 2019, charging the Defendant with Conspiracy to Distribute 50 grams

22  or more of Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and

23  (b)(1)(A)(viii), and Engaging in Monetary Transaction With Proceeds of Specified Unlawful

24  Activity, in violation of 18 U.S.C. §§ 1957 and 2.

PLEA AGREEMENT - 1

ORIGINAL

The Defendant, AUDREY JEAN WOLFORD, understands that the charges contained in the Indictment are Class A and Class D felonies, respectively, and that sentences for these charges may be imposed consecutively by the Court.

The Defendant, AUDREY JEAN WOLFORD, also understands that the maximum statutory penalty for Conspiracy to Distribute 50 grams or more of Methamphetamine Hydrochloride, in violation of 21 U.S.C. § 846 and 841(a)(1) and (b)(1)(A)(viii), is a term of imprisonment which may not be less than ten (10) years or more than life; a fine not to exceed $10,000,000; a term of supervised release of at least 5 years; denial of certain federal benefits and a $100 special penalty assessment.

The Defendant, AUDREY JEAN WOLFORD, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the five-year term of supervised release without credit for time previously served on post-release supervision.

The Defendant, AUDREY JEAN WOLFORD, also understands that the maximum statutory penalty for Engaging in Monetary Transactions With Proceeds of Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1957 and 2, is a fine not to exceed $250,000 under Title 18, United States Code, or a term of imprisonment for not more than ten (10) years or both; a term of supervised release of not more than 3 years; and a $100 special penalty assessment.

The Defendant, AUDREY JEAN WOLFORD, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the three-year term of supervised release without credit for time previously served on post-release supervision.

2. **Denial of Federal Benefits:**

The Defendant understands that by entering this plea of guilty the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp

PLEA AGREEMENT - 2

program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

**3.**     **The Court's Role in Plea and Sentencing Procedure:**

       The Court is not a party to this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

       The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

       The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

       The Defendant understands that the Court shall accept the Defendant's unconditional guilty plea as long as it meets the requirements of Fed. R. Crim. P. 11(b). The Court will therefore conduct a limited inquiry to determine whether the Defendant's plea is knowing, voluntary and intelligent, and has a sufficient factual basis.

**4.**     **Waiver of Constitutional Rights:**

The Defendant, AUDREY JEAN WOLFORD, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a).    The right to a jury trial;

(b).    The right at trial to confront and cross-examine the adverse witnesses;

(c).    The right to remain silent at trial with such silence not being used against the defendant in any way;

(d).    The right to testify at trial and present evidence;

(e).    The right to compel witnesses to testify; and

(f).    The right to plead not guilty and to persist with that plea.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be represented at trial and at every other stage of the proceedings by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

**5.    Elements of the Offense:**

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Distribute 50 grams or more of Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(viii), the United States would have to prove beyond a reasonable doubt the following elements:

a.    First, beginning on or about January 1, 2013 and continuing thereafter until on or about February 5, 2019, there was an agreement between two or more persons to distribute 50 grams or more of methamphetamine hydrochloride, a Schedule II controlled substance, and

b.    Second, AUDREY JEAN WOLFORD joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

The United States and the Defendant agree that in order to convict the Defendant of

PLEA AGREEMENT - 4

Engaging in Monetary Transactions With Proceeds of Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1957 and 2, the United States would have to prove beyond a reasonable doubt the following elements:

        a.     First, on or about April 12, 2016, the Defendant, knowingly engaged or attempted to engage in a monetary transaction;

        b.     Second, the Defendant knew that the transaction involved criminally derived property;

        c.     Third, the property had a value greater than $10,000;

        d.     Fourth, the property was, in fact, derived from a specified unlawful activity, that is, the conspiracy to distribute methamphetamine in violation of Title 21, United States Code, Sections 846 and 841(a)(1) & (b)(1)(A)(viii); and

        e.     Fifth, that the transaction occurred in the United States.

**6.**     **Factual Basis and Statement of Facts**:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The Defendant was born on 1977, and is a citizen of the United States.

Beginning on or about January 1, 2013 through on or about February 5, 2019, AUDREY JEAN WOLFORD and Vincent Raymond Rios and others conspired to purchase and distribute 50 grams or more of methamphetamine hydrochloride on Guam. In 2015, AUDREY JEAN WOLFORD traveled with Vincent Raymond Rios to Washington State. AUDREY JEAN WOLFORD carried approximately $10,000 in cash on her person, Vincent Raymond Rios concealed approximately $70,000 to $130,000 in U.S. currency in his luggage. AUDREY JEAN WOLFORD and Vincent Raymond Rios met drug suppliers namely Rafael Lugo a/k/a "Vato" and Amanda Forsman. Rafael Lugo a/k/a "Vato" provided approximately four (4) lbs. of methamphetamine hydrochloride to Vincent Raymond Rios and AUDREY JEAN WOLFORD. Vincent Raymond

PLEA AGREEMENT - 5

Rios packaged the methamphetamine in flat rate boxes. AUDREY JEAN WOLFORD prepared the postal forms and with Vincent Raymond Rios, mailed the packages containing methamphetamine hydrochloride to Guam.

AUDREY JEAN WOLFORD and Vincent Raymond Rios returned to Guam and received the packages containing the methamphetamine hydrochloride. The methamphetamine hydrochloride was distributed to Mario Champaco, Juan Ada, Jesse Acfalle, Alberto "Bong" Boleno, Eric Aponik, Joshua Ulloa, Jeffrey Aguigui, Josephine Quintanilla, Louis Hocog and other persons. The methamphetamine was sold and the proceeds of the illegal sales of the drug were returned to AUDREY JEAN WOLFORD and Vincent Raymond Rios. Vincent Raymond Rios concealed portions of the illegal proceeds in safety deposit boxes at the Bank of Guam and at Coast 360. Rafael Lugo a/k/a "Vato" continued to supply methamphetamine hydrochloride to Vincent Raymond Rios and AUDREY JEAN WOLFORD.

Search warrants were issued for AUDREY JEAN WOLFORD'S cellular phone number (671) XXX-0466. AUDREY JEAN WOLFORD sent and received text messages using the nickname "Redd" and sold methamphetamine hydrochloride by the "gram," "plate," and pound. AUDREY JEAN WOLFORD sold methamphetamine out of the 223 Bejong Street, Barrigada, Guam residence (Lot Number 2364-1-1(Subdivision of Lot Number 2364-1), Municipality of Barrigada, Territory of Guam, Estate Number 10718, Suburban), or drove her Infiniti and met customers in hotels and other public places.

In 2016, Eric M. Aponik ("Aponik") informed Vincent Raymond Rios and AUDREY JEAN WOLFORD that he was able to utilize his employer's (Reaction Automotive) account to launder their criminal proceeds. In exchange for each act of money laundering for Vincent Raymond Rios and AUDREY JEAN WOLFORD, Aponik received an ounce of methamphetamine.

On or about April 12, 2016, Eric M. Aponik, AUDREY JEAN WOLFORD and Vincent Raymond Rios knowingly conducted a monetary transaction.  Vincent Raymond Rios and AUDREY JEAN WOLFORD provided Aponik with $125,000.00 in U.S. currency.  AUDREY JEAN WOLFORD knew that the monetary transaction involved criminally derived property, that is, that the currency was the proceeds from the illegal sales of methamphetamine hydrochloride on Guam.  The currency, amounting to $125,000.00 in cash, had a value of greater than $10,000 and was in fact, derived from the importation, receipt, and sale of narcotic or other dangerous drugs.

Aponik received the $125,000.00 in cash and deposited the $125,000.00 into his employer's (Reaction Automotive) Bank of Hawaii account xx-xx3829.  Aponik caused Reaction Automotive to issue a check (Check number # 4115) in the amount of $125,000.00 payable to Title Guaranty of Guam, Inc.  AUDREY JEAN WOLFORD used the Reaction Automotive check # 4115 to purchase and receive a residence at 223 Bejong Street, Barrigada, Guam (Lot Number 2364-1-1(Subdivision of Lot Number 2364-1), Municipality of Barrigada, Territory of Guam, Estate Number 10718, Suburban.  AUDREY JEAN WOLFORD also provided Title Guaranty of Guam, Inc. with an additional cashier's check in the amount of $52,543.53.  The cashier's check in the amount of $52,543.53 was also in fact derived from the importation, receipt and sale of methamphetamine hydrochloride on Guam. The transaction occurred in the United States.  AUDREY JEAN WOLFORD used the illegal proceeds from the sales of methamphetamine to purchase a residence located at 223 Bejong Street, Lot 2364-1-1 (Subdivision of Lot Number 2364-1), Municipality of Barrigada, Territory of Guam, Estate Number 10718, Suburban, and which was titled in AUDREY JEAN WOLFORD'S name and recorded with the Island of Guam, Government of Guam, Department of Land Management Office of the Recorder.

AUDREY JEAN WOLFORD knowingly conducted, or attempted to conduct, a monetary transaction, she knew that the transaction involved criminally derived property with a value greater

PLEA AGREEMENT - 7

than $10,000 and that the property was, in fact, derived from the importation, receipt, sale, and otherwise dealing in narcotic or other dangerous drugs.   The monetary transaction occurred in the United States.

AUDREY JEAN WOLFORD and Eric Aponik paid protection fees to retired Guam Police Department Officer John T. Mantanona a/k/a "Boom."  In exchange for a protection fee, John T. Mantanona a/k/a "Boom" advised AUDREY JEAN WOLFORD how to avoid detection and arrest by law enforcement officers as she distributed methamphetamine hydrochloride.   John T. Mantanona a/k/a "Boom" advised AUDREY JEAN WOLFORD to perform her drug transactions at local hotels, ran license plate numbers, and informed her to avoid individuals he identified as cooperating with the government.

On or about November 5, 2018, Eric Aponik ordered 250 grams of methamphetamine which was to be mailed to Guam.  On November 12, 2018, and prior to attempting to receive the package in the mail, AUDREY JEAN WOLFORD contacted John T. Mantanona a/k/a "Boom" to ensure the activity was not detected by law enforcement.   AUDREY JEAN WOLFORD informed John T. Mantanona a/k/a "Boom" that Eric Aponik wanted him to "stake out the post office if there are any officers who can stake out the post office... I know what to do I know what to look for."   On November 18, 2018, AUDREY JEAN WOLFORD contacted John T. Mantanona a/k/a "Boom" stating "I'm already going to check the box and Eric told me it's clear but I just wanna hear from you, you know, from your mouth."   He responded "So far, so good."  Eric Aponik also advised AUDREY JEAN WOLFORD that the package was safe to pick up because he checked with "Boom."

AUDREY JEAN WOLFORD and John T. Mantanona a/k/a "Boom" devised a code system to use when she wanted him to run a name or license plate.  AUDREY JEAN WOLFORD would text a name or a license plate number to John T. Mantanona a/k/a "Boom" at (671) XXX-8558 with

PLEA AGREEMENT - 8

an "asterick" or "asteroid star" symbol.  AUDREY JEAN WOLFORD and John T. Mantanona a/k/a "Boom" devised another text code, a star and a heart symbol, when she wanted him to run a license plate or a name.   He would reply using the same symbols/code to indicate that she was not being watched.  AUDREY JEAN WOLFORD and John T. Mantanona a/k/a "Boom" would meet at her residence located in 223 Bejong Street, Barrigada.

On November 19, 2018, John T. Mantanona a/k/a "Boom" informed Eric Aponik that it was safe to pick up the package. Eric Aponik then informed AUDREY JEAN WOLFORD that it is safe to pick up the package.   AUDREY JEAN WOLFORD attempted to possess a package believed to contain methamphetamine, a Schedule II controlled substance.  AUDREY JEAN WOLFORD was arrested by Special Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives and released on November 20, 2019.   After she was released, AUDREY JEAN WOLFORD called John T. Mantanona a/k/a "Boom" and informed him that she was arrested and questioned about the 250 grams of methamphetamine in the package.

Beginning on or about January 1, 2013 and continuing thereafter until on or about February 5, 2019, there was an agreement between two or more persons to distribute methamphetamine hydrochloride, a Schedule II controlled substance, and AUDREY JEAN WOLFORD joined in the agreement to distribute methamphetamine hydrochloride to persons known and unknown knowing of its purpose and intending to help accomplish that purpose.

This statement of facts is made for the limited purpose of supporting the Defendant's guilty plea.  It therefore does not contain all facts relating to the underlying criminal conduct.  This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

7. **Waiver of Inadmissibility of Statements:**

1    The Defendant agrees to waive the inadmissibility of statements made in the course of plea

2    discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if the

3    Defendant withdraws this guilty plea or breaches this Plea Agreement. The Defendant

4    acknowledges that any statements made by the Defendant to law enforcement agents in the course of

5    plea discussions in this case would be admissible against the Defendant in the United States's case-

6    in-chief if the Defendant were to withdraw or breach this Plea Agreement.

7    **8.**    **The United States Agrees:**

8         a.   <u>Dismissals</u>:

9         At the time of sentencing, the United States agrees to move to dismiss Counts 2, 3, and 4 of

10   the Indictment, which charges the Defendant with Count 2 - Distribution of Methamphetamine

11   Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); Count 3 - Distribution of

12   Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); and Count 4 -

13   Attempted Possession with Intent to Distribute Methamphetamine Hydrochloride, in violation of 21

14   U.S.C. § 846 & 841(a)(1) & (b)(1)(A)(viii).

15        b.   <u>Not to File Additional Charges</u>:

16        The United States Attorney's Office for the Districts of Guam and the NMI agrees not to

17   bring any additional charges against the Defendant based upon information in its possession at the

18   time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity

19   charged in this Indictment, unless the Defendant breaches this Plea Agreement any time before or

20   after sentencing.

21   **9.**    **United States Sentencing Guideline Calculations**:

22        The Defendant understands and acknowledges that the United States Sentencing Guidelines

23   (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's

24   applicable sentencing guideline range at the time of sentencing.    In determining a sentence, the

PLEA AGREEMENT - 10

1    Court is obligated to consider that range, possible departures or variances under the Sentencing

2    Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

3        a.   Base Offense Level:

4        The United States and the Defendant agree that the base offense level for Conspiracy to

5    Distribute 50 grams or more of Methamphetamine Hydrochloride is 34.  See U.S.S.G. § 2D1.1(c)(5).

6        The United States and the Defendant agree that the base offense level for Engaging in

7    Monetary Transactions With Proceeds of Specified Unlawful Activity is 34.  See U.S.S.G. §

8    2S1.1(a)(1).

9        The United States and the Defendant agree and stipulate that Defendant conspired to

10   distribute more than 1,800 grams (or approximately four lbs.) of methamphetamine hydrochloride,

11   also known as "ice," in furtherance of the criminal activity jointly undertaken by the Defendant; this

12   amount was within the scope of the Defendant's agreement; this amount was reasonably foreseeable

13   to the Defendant in connection with the scheme; this was the offense from which the laundered

14   funds were derived; and the Defendant's relevant conduct for sentencing purposes should be

15   calculated based upon this amount, pursuant to U.S.S.G. §1B1.3.

16       b.   Specific Offense Characteristics:

17       The United States and the Defendant also agree and stipulate that the base offense for

18   Engaging in Monetary Transactions With Proceeds of Specified Unlawful Activity is increased by

19   an additional 1 level.  See U.S.S.G. § 2S1.1(b)(2)(A).

20       c.   Victim-Related Adjustments:

21       There are no victim-related adjustments.

22       d.   Role in the Offense :

23       Based upon the Defendant's role in the offense, as an organizer, leader, manager or

24

PLEA AGREEMENT - 11

1 | supervisor, the United States and the Defendant agree the Defendant's base offense for Conspiracy

2 | to Distribute 50 grams or more of Methamphetamine Hydrochloride should be increased by 2 levels.

3 | See U.S.S.G. §3B1.1(c).

4 |       e. Acceptance of Responsibility:

5 |       If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance

6 | of personal responsibility for the criminal conduct; provides complete and accurate information

7 | during the sentencing process; does not commit any obstructive conduct; accepts this Plea

8 | Agreement; and enters a plea of guilty, the United States will move for a three (3) level downward

9 | adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to

10 | U.S.S.G. §3E1.1(a) and (b).

11 |       The Defendant and the United States agree that the United States may at its option and upon

12 | written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance

13 | of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any

14 | criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

15 |       Therefore, the United States and the Defendant agree that the Defendant's final adjusted

16 | offense level would be 34.

17 |       f. Criminal History:

18 |       The United States and the Defendant understand that the Defendant's criminal history

19 | computation is tentative and that ultimately the Defendant's criminal history category will be

20 | determined by the Court after review of the Presentence Investigative Report. The United States and

21 | the Defendant have made no agreement and make no representations as to the criminal history

22 | category, which shall be determined after the Presentence Investigative Report is completed.

23 | **10.   Substantial Assistance**

24 |

The United States also agrees to furnish the Defendant an opportunity to provide "substantial assistance," that is, information and assistance in the investigation and prosecution of others. If the Defendant agrees to meet with federal and state law enforcement agents in an attempt to assist them in obtaining information that would form the basis of a motion for correction or reduction of sentence to be filed pursuant to U.S.S.G. §5K1.1 and/or 18 U.S.C. § 3553(e). The Defendant understands that whether any such information amounts to substantial assistance is a determination left to the United States Attorney's Office.

a. The Defendant understands and agrees to participate in full debriefings by federal and local investigative agencies about the Defendant's knowledge of illegal conduct, at times and places to be decided by these agencies. The Defendant agrees to provide complete, accurate, and truthful information during the debriefings. Such debriefings may involve the use of a polygraph, if requested by the agencies. It is understood that the Defendant may have an attorney present at the debriefings. The Defendant also agrees to participate in any future court proceeding involving any named or unnamed coconspirators and any other persons involved in criminal activity, by testifying completely and truthfully. Such court proceedings include grand jury proceedings, trials, and sentencing hearings.

b. The Defendant agrees that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if the Defendant fails to provide truthful, complete and honest information during debriefings, testimony before the grand jury, or any court proceedings, or if the Defendant fails a polygraph examination. The determination whether the Defendant has failed a polygraph examination shall be made by the Court.

c. The Defendant understands this agreement does not protect her from prosecution for perjury, obstruction of justice, or any other offense should the Defendant commit any crime during the Defendant's cooperation under this agreement.

d. The Defendant understands further that if the United States determines that the Defendant has provided "substantial assistance" and a motion is made pursuant to U.S.S.G. §5K1.1, the Court will be free to impose any sentence, even one below the applicable Guidelines sentencing range. Furthermore, if a motion is also made pursuant to 18 U.S.C. § 3553(e), the Court will be free to impose a sentence below any statutory minimum. If a "substantial assistance" motion is filed, both the United States and the Defendant will be free to make a specific recommendation with respect to any correction or reduction of sentence. It is understood that the United States will inform the sentencing judge about the timing and extent of the Defendant's cooperation.

e. The Defendant understands that, if the United States files a motion indicating the Defendant has provided "substantial assistance," the appropriate reduction shall be determined by the Court for reasons including consideration of the following: (1) the Court's evaluation of the significance and usefulness of the Defendant's assistance, taking into consideration the United States' evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the Defendant; (3) the nature and extent of the Defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the Defendant or the Defendant's family resulting from the Defendant's assistance; and (5) the timeliness of the Defendant's assistance. See U.S.S.G. §5K1.1(a)(1)-(5).

The Defendant acknowledges that she has not completed providing substantial assistance at the time of the entry into this Plea Agreement and that the United States is not bound to move for a downward departure unless the Defendant provides information that is fully truthful and complete and that the Defendant testifies truthfully and completely at any hearing, trial, grand jury proceeding,

PLEA AGREEMENT - 14

or other court proceeding if called as a witness by any party. The Defendant understands that it may be necessary to continue her sentencing date in order to verify full compliance with this agreement.

The Defendant acknowledges that if she fails to complete her efforts to provide substantial assistance by refusing reasonable requests to meet with law enforcement agents, by providing false information or withholding information from agents, or by failing to testify completely, truthfully, and honestly, the United States is under no obligation to file a motion for a downward departure pursuant to 18 U.S.C. § 3553(e) or U.S.S.G. §5K1.1, and this agreement shall be considered breached and null and void. The United States may then prosecute the Defendant on all available charges, including making false statements and perjury.

**11.   Incarceration:**

a.   Length of Imprisonment:

The United States and the Defendant agree to recommend that the Court impose a sentence within the applicable sentencing guideline range.

b.   Bureau of Prison Recommendations:

The United States Attorney's Office for the Districts of Guam and the NMI acknowledges that the Defendant intends to request the Court to write a letter to the United States Bureau of Prisons  recommending that the Defendant be allowed to participate in the Bureau of Prisons' intensive drug treatment program or to serve the sentence at a specific institution. The Defendant understands that any decision concerning the Defendant's eligibility to participate in the program or place of incarceration is within the exclusive province of the Bureau of Prisons.

c.   The United States Attorney's Office agrees to notify the appropriate Bureau of Prisons officials and request that, in the interests of the Defendant's safety, that the Defendant be incarcerated separate and apart from any of the co-defendants or any other person the Defendant has provided information about.

PLEA AGREEMENT - 15

**12.** <u>**Criminal Fine:**</u>

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

**13.** <u>**Supervised Release:**</u>

The United States and the Defendant agree to recommend that the Court impose a 5-year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

a. that the Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and

b. that the Defendant complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. The Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. The Defendant shall contribute to the cost of treatment according to the Defendant's ability.

c. that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

**14.** <u>**Mandatory Special Penalty Assessment:**</u>

The Defendant agrees to pay the $200 mandatory special penalty assessment to the Clerk of Court for the District of Guam, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

**15.** <u>**Payments While Incarcerated**</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

**16.** <u>**Forfeiture:**</u>

The Defendant agrees to forfeit, pursuant to 21 U.S.C. § 853 and 28 U.S.C. § 2461(c), all interests in any drug-related asset that the Defendant currently owns, has previously owned or over which the Defendant currently, or has in the past, exercised control, directly or indirectly, and any property the Defendant has transferred, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense, including but not limited to the following specific properties (collectively "properties"):

**a. REAL PROPERTY**

All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, described as:

> Lot No. 2364-1-1, (Subdivision of Lot Number 2364-1), Municipality of Barrigada, Territory of Guam, Estate Number 10718, Suburban, as said Lot is marked and designated on that Property Survey Map, dated February 10, 1959 and recorded February 18, 1959, at the Records Division, Department of Land Management, Government of Guam, under Instrument Number 35825.

> Registered Land, with the registered owner being Gil Suguitan, the owner of record being    AUDREY JEAN WOLFORD, an unmarried woman, as sole and separate property, and the Last Certificate of Title Registration Number being 95096.

> Area:  603.82 +/- Square Meters.

**b. PERSONAL PROPERTY**

One (1) Tiffany Victoria Key Pendant.

Defendant agrees that all of the properties listed above are forfeitable, and agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this agreement.

The Defendant stipulates and agrees that the conduct described in the Factual Basis contained herein provides a basis for forfeiture of the above listed properties.  Defendant further agrees to waive all interest in any such properties in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.  The Defendant agrees to consent to the entry of orders of

PLEA AGREEMENT - 17

forfeiture for such properties and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Pursuant to the provisions of Fed. R. Crim. P. 32.2(b)(1)(1), the United States and the Defendant agree to request that promptly after accepting this plea agreement, the Court make a determination that the government has established that the remaining listed properties constitute properties used in a transaction or attempted transaction to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii) and 860(a), or proceeds traceable to a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii) and 860(a) of the offense, and enter an order of forfeiture. Pursuant to Rule 32.2(b)(4), the Defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the Defendant at the time it is entered.

Defendant acknowledges that she understands that the forfeiture of properties is part of the sentence that will be imposed in this case and waives any failure by the court to advise her of this pursuant to Rule 11(b)(1)(J), at the time her guilty plea is accepted.

Defendant further agrees to forfeit any right, title, and interest she may have in and to the 2016 Toyota 4Runner, Guam License Plate No. SJ3484, Vin No. JTEZU5JR1G5113678 ("Toyota 4Runner") identified in the Indictment in *United States v. Vincent Raymond Rios*, CR16-00039 (D. Guam), ECF No. 7. Defendant agrees to withdraw any claim of interest previously filed with respect to the Toyota 4Runner in either administrative or judicial proceedings and not to contest any administrative forfeiture proceedings, criminal judicial proceedings, or civil judicial proceedings commenced against the Toyota 4Runner. If defendant submitted a claim and/or petition for remission for the Runner on behalf of herself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right she may have to seek remission or mitigation of the forfeiture of the 4Runner.

The Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excess fine or punishment. The Defendant further agrees to take all steps as requested by the United States to pass clear title to forfeitable properties to the United States, and to testify truthfully in any judicial forfeiture proceeding. The Defendant acknowledges that all property covered by this agreement is subject to forfeiture as property involved in the illegal conduct.

The Defendant understands that the United States reserves the right to seek additional forfeiture, including but not limited to additional sums of money or property used in a transaction or attempted transaction, to commit, or to facilitate the commission of or are proceeds traceable to a violation of the offense of conviction, of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii) and 860(a), and constitute or are derived from proceeds traceable to such violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii) and 860(a), Defendant understands that pursuant to Fed. R. Crim. P. 32.2(b)(2)(C) and Rule 32.2(e)(1), if the court cannot identify all of the specific properties subject to forfeiture, or calculate the amount of the money judgment, before sentencing, it may enter an order that describes the property in general terms.

The Defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the Defendant up to the value of the money judgment. The court shall retain jurisdiction to settle any disputes arising from application of this clause. The Defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of Defendant's sentence.

The Defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the Defendant's sentencing. The Defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such

PLEA AGREEMENT - 19

assets. The Defendant further agrees that Fed. R. Crim. P. 11 and U.S.S.G. § 1B1.8 will not protect from forfeiture assets disclosed by the Defendant as part of his cooperation.

The Defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the Defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the Defendant's properties shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the Defendant in addition to forfeiture.

**17.** **Financial Disclosure Obligations:**

Defendant agrees to submit to the United States Attorney's Office for the Districts of Guam and the NMI, within three weeks of the execution of this plea agreement, a complete, accurate and truthful financial statement and accompanying releases, in a form it provides and as it directs. Defendant agrees to disclose all assets in which she has any interest or over which she exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Defendant authorizes the United States Attorney's Office for the Districts of Guam and the NMI to obtain a credit report on her to evaluate her ability to satisfy any financial obligation imposed by the Court.

Defendant understands and agrees that any monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States, pursuant to 18 U.S.C. § 3613. Defendant understands that, by law, interest accrues on any remaining balance of the debt. Defendant agrees not to dissipate assets. If Defendant is financially unable to immediately pay any monetary penalties in full, Defendant agrees: (a) to cooperate with the United

PLEA AGREEMENT - 20

States Attorney's Office; (b) to provide updated financial statements upon request by the United States Attorney's Office and to keep the office advised about Defendant's current address; and (c) for her debt to be placed on the Treasury Offset Program and any tax refund/rebate offset program existing in her state of residency. Defendant understands that any funds captured by an offset program will be paid towards her monetary penalties, but does not relieve her of her obligation to pay the monetary penalties in full.

**18.    Additional Violations of Law Can Void Plea Agreement:**

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

**19.    Appeal Rights:**

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction and the sentence the Court imposes, including any restitution order. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

**20.    Hyde Amendment Waiver:**

The Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**21.    Integration Clause:**

PLEA AGREEMENT - 21

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Districts of Guam and the NMI, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Districts of Guam and the NMI.

Shawn N. Anderson
United States Attorney

ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

Date 11/25/2019

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

AUDREY JEAN WOLFORD
Defendant

Date 21 NOV 2019

PLEA AGREEMENT - 22

I have read the Plea Agreement and have discussed the contents of the agreement with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____          _21 NOV 2019_
JEFFREY A. MOOTS                                          Date
Attorney for the Defendant